**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| TALATHA SHERRILL, | * | |
| **Plaintiff** | * | |
| **v.** | * | CIVIL NO. JKB-18-476 |
| DEPUTY JOSEPH CUNNINGHAM, *et al.*, | * | |
| **Defendants.** | * | |

      *     *     *     *     *     *     *     *     *     *     *     *

## MEMORANDUM

Plaintiff Talatha Sherrill brought this action on February 15, 2018 against Joseph Cunningham and Jonathan Pristash, officers of the Cecil County Sheriff's Office, and Cecil County Sheriff Scott Adams (collectively, "the Officer Defendants"), as well as the Cecil County Sheriff's Office itself and Cecil County. (Compl., ECF No. 1.) Plaintiff amended her complaint on April 9, 2018, removing the Cecil County Sheriff's Office and Cecil County as defendants and naming the State of Maryland ("the State") as a defendant. (*See* Am. Compl., ECF No. 10.) Plaintiff's amended complaint asserts ten causes of action. Defendants Cunningham and Pristash answered one claim (ECF No. 14), and the Officer Defendants collectively moved to dismiss the remainder of the claims against them on April 23, 2018 (ECF No. 15). The State moved to dismiss the claims brought against it the same day. (State Mot. Dismiss, ECF No. 18.) Both motions are fully briefed (*see* ECF Nos. 21, 22, 25) and ripe for review. There is no need to hold a hearing to resolve either motion. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below the Court will, by accompanying order, grant the State's motion to dismiss and grant in part and deny in part the Officer Defendants' motion to dismiss.

# I.    *Background*[1]

Plaintiff is an "African-American woman with a dwarfism disability, standing at four feet and six-inches tall." (Am. Compl. ¶ 6.) On or about the night of January 14, 2016, Plaintiff was driving in Cecil County, Maryland, when she passed, and made eye contact with, Defendant Joseph Cunningham, a deputy in the Cecil County Sheriff's Office who was seated in his marked police vehicle. (*Id.* ¶¶ 13-16.) Even though Plaintiff was a seat-belted driver, operating her vehicle "carefully and prudently" (*id.* ¶ 13), Defendant Cunningham activated his lights and pulled Plaintiff over on a "poorly lit" section of Susquehanna River Road in Cecil County. (*Id.* ¶¶16-18.) After seeing Defendant Cunningham's lights, Plaintiff pulled over and retrieved her license and registration. (*Id.* ¶¶ 18-19.) When Defendant Cunningham approached Plaintiff's vehicle, Plaintiff tried to hand him her license and registration through her partially-rolled-down window. (*Id.* ¶¶ 21-22.) Allegedly, this did not sit well with Defendant Cunningham.

Defendant Cunningham "shoved Plaintiff's hand" and "aggressively" demanded that she completely roll down her window. (Am. Compl. ¶ 23.) The deputy used profanity, and continued to do so while demanding that Plaintiff roll down her window, even as Plaintiff "politely declined" and continued her attempts to hand over her license and registration. (*Id.* ¶¶23-24.) Instead of accepting her license and registration, Defendant Cunningham "took a step back from Plaintiff's vehicle and began putting on gloves." (*Id.* ¶ 25.) He then "retrieved a tool that Plaintiff believed would be used to break her window." (*Id.*)

"[F]earful of Defendant Cunningham's aggressive nature," Plaintiff "pulled away from the scene." (Am. Compl. ¶ 26.) She drove off at "or below" the speed limit, towards a nearby

---

[1] As this memorandum is evaluating motions to dismiss for a facial lack of subject-matter jurisdiction and for failure to state claims upon which relief can be granted, the facts are recited here as alleged by Plaintiff. *See Ben-Davies v. Blibaum & Assocs., P.A.*, 695 F. App'x 674, 676 (4th Cir. 2017); *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

convenient store where she believed the area would be well-lit. (*Id.* ¶ 27.) Prior to reaching the convenient store, however, a second officer, Defendant Jonathan Pristash, cut in front of Plaintiff's vehicle. (*Id.* ¶ 28.) In response, Plaintiff came to a complete stop and put her vehicle in park. (*Id.* ¶ 29.) There are no allegations as to why Defendant Pristash stopped Plaintiff's vehicle, *e.g.*, whether he had already been present and witnessed Plaintiff drive away from Defendant Cunningham, or was called to the scene, or for some other reason.

There are, however, allegations about what happened next. After Plaintiff came to a complete stop, the two deputies immediately approached her vehicle, and "aggressively pulled open Plaintiff's driver's side door, forcibly removed Plaintiff from her vehicle and violently threw her face down on the concrete." (Am. Compl. ¶ 30.) The officers "were emboldened to use physical force because Plaintiff was small in stature." (*Id.*) They "viciously jerked Plaintiff's arms behind her back and handcuffed her." (*Id.* ¶ 31.) Plaintiff, a 4'6" tall, 120 lbs. woman who was unarmed and compliant, suffered a fractured right elbow, neck strain, lower back strain, and facial swelling and bruising as a result of the manner in which Defendant's Cunningham and Pristash treated her. (*Id.* ¶ 40.)

While Plaintiff was handcuffed, face down on the pavement outside of her car, Defendants Cunningham and Pristash, and several other unnamed officers, searched Plaintiff and her car and "threw Plaintiff's personal items about the car and the ground." (Am. Compl. ¶ 36.) This search "yielded nothing illegal." (*Id.*)

Defendants Pristash and Cunningham arrested Plaintiff and charged her with "various criminal and traffic offenses in Cecil County District Court." (Am. Compl. ¶ 38.) Plaintiff, it seems, was found guilty of some crimes in a state district court.[2] "After an appeal," however,

---

[2] According to the Officer Defendants, Plaintiff was found guilty of "obstructing and hindering" as well as four traffic offenses after a trial held on June 7, 2016, and found not guilty of three traffic offenses at the same trial.

"the State entered a nolle prosequi to all charges against Plaintiff in Cecil County Circuit Court." (*Id.*)

Plaintiff has now brought a lawsuit in this Court against the State, Cecil County Sheriff Scott Adams in his official and individual capacities, and Defendants Cunningham and Pristash, in both their official and individual capacities. Plaintiff brings ten causes of action: Counts I and II are brought under 42 U.S.C. § 1983 against Defendants Cunningham and Pristash for alleged violations of Plaintiff's constitutional rights, specifically unlawful search and seizure (Count I) and excessive force (Count II); Counts III and IV present disability discrimination claims against the State only, alleging violations of Title II of the Americans with Disabilities Act ("ADA") (Count III) and the Rehabilitation Act (Count IV); Count V is a tort claim against the State and Sheriff Adams for negligent hiring, training, retention and supervision; and Counts VI-X are various state tort claims against all Defendants.

The Officer Defendants moved to dismiss Counts I, and V-X; Defendants Cunningham and Pristash have answered Count II, the Section 1983 excessive force claim. (*See* Ans., ECF No. 14.) The State moved to dismiss all claims against it, *i.e.*, Counts III-X. These motions are fully briefed and ripe, and the Court will turn to their disposition.

## II.  *Standards*

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

---

(Officer Defendants' Mot. Dismiss Mem. Supp. 6, ECF No. 15-1.) Ordinarily, the Court would be able to consider such purported facts even though they are not alleged in the complaint, because a court may consider public records when reviewing a motion to dismiss. *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006). However, despite their statements to the contrary, the Officer Defendants did not provide the Court with copies of the pertinent dockets. (*See* Officer Defendants' Mot. Dismiss Mem. Supp. at 6 ("Copies of all pertinent dockets are attached hereto.") Still, Plaintiff, in her opposition to the Officer Defendants' motion to dismiss, does not contest that she was found guilty of at least some criminal violations in the state trial court, so the Court will assume, for the purposes of this motion, that she was. In fact, Plaintiff implicitly concedes in her complaint that she was found guilty of some crimes at the initial trial court level, because she alleges that she appealed. (*See* Am. Compl. ¶ 38.)

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

Defendants seek to dismiss this suit in part on the ground that it is barred by the Eleventh Amendment. As this Court recently noted, "[t]he Fourth Circuit has not definitively ruled whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)." *Gross v. Morgan State Univ.*, ___ F. Supp. 3d. ___, 2018 WL 1898175, at *2 (D. Md. Apr. 19, 2018). Nevertheless, this Court "has favored analysis under Rule 12(b)(1) because [the Eleventh Amendment] functions as a block on the exercise of [subject matter] jurisdiction." *Id.* (internal quotation marks omitted). Thus, the Court will consider the Defendants' arguments regarding the possible applicability of the Eleventh Amendment as facial challenges to subject matter jurisdiction under Rule 12(b)(1). *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (discussing difference between facial and factual challenges to subject matter jurisdiction). Generally, the burden of proving subject matter jurisdiction is on the plaintiff. *See id.* However, the burden of establishing Eleventh Amendment immunity is on the Defendant. *See Hutto v. S. Carolina Retirement Sys.*, 773 F.3d 536, 543 (4th Cir. 2014).

**III.** *Analysis*

The Court's analysis of the Defendants' motions will proceed in the following manner: First the Court will discuss the claims brought against the State, then it will turn to the claims brought against the Officer Defendants in their official capacities, and finally address the claims brought against the Officer Defendants in their individual capacities.

**a.** *Claims against the State*

The majority of Plaintiff's claims against the State will be dismissed under Federal Rule of Civil Procedure 12(b)(1) because the State is entitled to Eleventh Amendment immunity. The State has not raised the Eleventh Amendment as a defense to Plaintiff's disability-related claims, but argue, correctly, that Plaintiff has failed to sufficiently state these claims. Therefore they will be dismissed under Federal Rule of Civil Procedure 12(b)(6).

**i.** *Eleventh Amendment Immunity*

The Eleventh Amendment of the United States Constitution generally serves to bar suits by citizens against states. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This bar is "not absolute." *Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). A state may consent to suit and waive the immunity, *see Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 491 (4th Cir. 2005), "and, in certain cases, Congress may abrogate the States' sovereign immunity," *Feeney*, 495 U.S. at 304.

The State has raised the defense of Eleventh Amendment immunity for Counts V-X, and it has not consented to suit on these claims, nor has it implicitly waived the immunity for these claims, nor has Congress abrogated the immunity for these claims. Thus, Counts V-X will be dismissed under Rule 12(b)(1) because they are barred by sovereign immunity. Plaintiff did not respond in opposition to this defense, and therefore appears to have conceded that these claims

should be dismissed against the State.  *See Ferdinand-Davenport v. Children's Guild*, 742 F.

Supp. 2d 772, 777 (D. Md. 2010).  The State has not raised the defense of Eleventh Amendment

immunity to Plaintiff's disability-related claims, nor does it seem that the State could do so

successfully,[3] but rather argues that these claims are insufficiently pled and fail under Rule

12(b)(6).

## ii.  *Disability Claims*

To state a claim under either Title II of the ADA or the Rehabilitation Act, Plaintiff must

allege that "(1) she has a disability, (2) she is otherwise qualified to receive the benefits of a

public service, program, or activity, and (3) she was excluded from participation in or denied the

benefits of such service, program, or activity, or otherwise discriminated against, on the basis of

her disability."  *Constantine*, 411 F.3d at 498; *see Seremeth v. Bd. of Cty. Comm'rs of Frederick

Cty.*, 673 F.3d 333, 336 n.1 (4th Cir. 2012) ("Claims under the ADA's Title II and the

Rehabilitation Act can be combined for analytical purposes because the analysis is substantially

the same." (internal quotation marks omitted)).  The first two elements are not disputed.  The

State concedes that Plaintiff has a disability and is qualified to receive the benefits of law

enforcement services.  (*See* State Mot. Mem. Supp. 7, ECF No. 18-1.)  The State argues,

however, that Plaintiff has not sufficiently alleged the third element, that she was discriminated

against on the basis of her disability.

Plaintiff argues that she was discriminated against in the course of a police investigation.

(*See* Opp'n 10-11, ECF No. 21.)  Discrimination due to a plaintiff's disability during the course

---

[3] The State implicitly waived the immunity for Plaintiff's Rehabilitation Act claim, as Plaintiff alleged that the State has received federal financial assistance.  *See Constantine*, 411 F.3d at 491; *Paulone v. City of Frederick*, 718 F. Supp. 2d 626, 634 (D. Md. 2010).  And it appears that Congress validly abrogated the immunity for ADA Title II claims of the type Plaintiff has brought here, *i.e.*, claims that rest on allegations of conduct that otherwise violates the Fourteenth Amendment.  *See U.S. v. Georgia*, 546 U.S. 151, 158 (2006).

of a police investigation is a cognizable claim under Title II of the ADA, *see Seremeth*, 673 F.3d at 336-37, but Plaintiff has failed to allege facts that constitute such a claim.

The only allegation in Plaintiff's amended complaint that even suggests disability discrimination is that Defendants Pristash and Cunningham were "emboldened to use physical force because Plaintiff was small in stature." (Am. Compl. ¶ 30.) Assuming this is true, it still does not plausibly constitute discrimination on the basis of a disability. Many people are "small in stature" but are not disabled in either a colloquial sense of the term or in the more specific usage defined under the ADA, and thus many people without Plaintiff's disability would have, according to Plaintiff's allegations, been treated in the same manner.

More importantly, this single allegation of the arresting officers' mental states at the time they arrested Plaintiff is too slight a foundation upon which to rest a disability discrimination claim. Plaintiff has not alleged anything else about her condition or the Officers' actions that would plausibly suggest discriminatory intent or a discriminatory result. Put differently, Plaintiff has not alleged anything—such as the use of a particular slur, a negative comment about her size, or anything specific about how she would have been treated absent her alleged disability—that suggests the Officer Defendants acted out of discriminatory animus towards her because of her dwarfism, or that they would not have acted similarly towards an individual who shared Plaintiff's characteristics aside from her dwarfism. Accordingly, Plaintiff fails to state a claim under either Title II of the ADA or the Rehabilitation Act, and Counts III and IV will be dismissed under Rule 12(b)(6). Ultimately, then, all of Plaintiff's claims against the State will be dismissed by accompanying order.

### b. *Claims against Officers in their official capacities*

Plaintiff's claims against the individual Defendants named in their official capacities are barred by the Eleventh Amendment. These are essentially claims against the Cecil County Sheriff's Office, *see Andrews v. Daw*, 201 F.3d 521, 525 (4th Cir. 2000) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)) (noting that official capacity suits are "in essence . . . 'suit[s] against the entity.'"), and the Cecil County Sheriff's Office is a state agency for purposes of the Eleventh Amendment, *see Kronk v. Carroll Cty., Md.*, Civ. No. L-11-0277, 2012 WL 245059, at *6-*8 (D. Md. Jan. 25, 2012) (holding that a County Sheriff in Maryland was a state official entitled to Eleventh Amendment immunity, and citing several other cases of this Court that so hold). The State has not consented to suit on any of Plaintiff's claims against the Officers in their official capacities, nor has it waived the immunity for any of these claims (the Rehabilitation Act claim was brought against the State only), nor has Congress abrogated the immunity for any of these state common law and Section 1983 claims. *See McConnell v. Adams*, 829 F.2d 1319, 1328 (4th Cir. 1987) ("§ 1983 does not abrogate eleventh amendment immunity.").

Under *Ex Parte Young*, 209 U.S. 123 (1908), a plaintiff may sue a State official in his official capacity for violations of federal law if she seeks only prospective injunctive relief. *See Md. Cmty. Health Sys., LLP v. Glendening*, 115 F. Supp. 2d 599, 601 (D. Md. 2000). Technically, Plaintiff has requested this relief (*see* Am. Compl. ¶ 106), but the Court will nevertheless dismiss the official capacity claims against the Officer Defendants for several reasons. First, Plaintiff's official capacity claim against Sheriff Adams (Count V) is for a violation of state law, and the *Young* exception does not apply to violations of state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104-06 (1984). For the same reason,

the Court will dismiss Plaintiff's official capacity state law claims against Defendants Cunningham and Pristash (Counts VI-X). That leaves Plaintiff's two official capacity claims against Defendants Cunningham and Pristash alleging federal constitutional violations (Counts I and II).

Again, these are "*not* [claims] against the official personally, for the real party in interest is the entity." *Graham*, 473 U.S. at 166 (emphasis in the original). Because these are essentially claims against the entity, *i.e.*, the Cecil County Sheriff's Office, "[m]ore is required," to establish liability. *Id.* "[A] governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law." *Id.* (internal quotation marks omitted); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Plaintiff does not allege that Defendants Cunningham and Pristash acted according to any "policy or custom" when they allegedly violated her constitutional rights. (*See* Am. Compl. ¶¶ 46-64.)[4] Further, Plaintiff appears to concede that she is not requesting prospective injunctive relief against Defendants Cunningham and Pristash in their official capacities because she does not argue that these claims should survive because of the *Young* exception.

Plaintiff instead argues that *all* of her official capacity claims should survive because the Officer Defendants are not State officials for purposes of Eleventh Amendment immunity. Plaintiff, however, does not contend that the Cecil County Sheriff's Office is not a State agency. Rather, she contends that the State would "undoubtedly . . . argue that it is not responsible for

---

[4] Elsewhere in her complaint, *i.e.*, not under the headings of her two constitutional claims, Plaintiff alleges that "Defendants Pristash and Cunningham did not have adequate training on the legal standards applicable to stop and frisks, traffic stops, or the use of force" (Am. Compl. ¶ 41), and that "[i]t was foreseeable that Defendants Pristash and Cunningham would illegally stop and frisk citizens, like Plaintiff, without proper training" (*id.* ¶ 44). The Court reads these allegations as part of Plaintiff's (state law) negligent hiring, training, retention, and supervision claim against Sheriff Adams. She does not clearly allege that Defendants Cunningham and Pristash were following some policy or practice of the Cecil County Sheriff's Office when they engaged in the alleged actions underlying her constitutional claims.

paying a judgment" in this case because Plaintiff alleges that the Officers acted with malice and gross negligence and the State has not waived immunity for such actions under the Maryland Tort Claims Act ("MTCA"). (Opp'n at 8.) Even if the MTCA was relevant to this case (and the Court does not see how it is), this argument is unavailing.

Plaintiff understandably confuses the question of whether the individual Defendants are immune under the Eleventh Amendment with the question of who would pay for a judgment if one was entered against them. This confusion is understandable because whether a plaintiff *seeks* an award of damages that would be paid by the State is "the most important" factor in determining whether an official or agency is a state official or agency for Eleventh Amendment immunity purposes. *See Ram Ditta v. Md. Nat'l Park and Planning Comm'n*, 822 F.2d 456, 457 (4th Cir. 1987). The Supreme Court has repeatedly found that the basic goal of the Eleventh Amendment is to prevent suits by private citizens seeking damages against state governments, and has sought to protect this goal by applying the Eleventh Amendment to suits that name individuals or agencies but are in effect attempts at recovery against a state. *See Edelman*, 415 U.S. at 662-63. So, when presented with a question of whether a particular defendant is, at bottom, an alter ego of a state, a court should consider whether the state treasury would be "responsible for paying any judgment that might be awarded." *Ram Ditta*, 822 F.2d at 457.

But who pays, after the dust is settled and the merits decided, does not retroactively affect the immunity calculus. A person cannot sue a state and defeat Eleventh Amendment immunity on the promise that someone besides the state would pay, *see Regents of the Univ. of California v. Doe*, 519 U.S. 425, 431 (1997), just as a state cannot cover persons with the blanket of immunity simply by offering to pay whatever judgment is awarded, *see Sales v. Grant*, 224 F.3d 293, 297-98 (4th Cir. 2000). Whether a person or entity is protected by the Eleventh

Amendment is not "a formalistic question of ultimate financial liability." *Doe*, 519 U.S. at 431. That the State would, according to Plaintiff, "undoubtedly . . . argue" that it should not pay whatever judgment may eventually be awarded in this case does not overcome the legal reality that the Cecil County Sheriff's Office is, generally speaking, a State office, and its officers are, generally speaking, State officials. *See Kronk*, 2012 WL 245059, at *6. That legal reality is the reason the Court will dismiss all official capacity claims against the individual officers.

### c. *Claims against the Officers in their individual capacities*

Finally, Plaintiff has brought claims against the individual officers in their individual capacities as well. These claims are not "in essence [actions] for the recovery of money from the state," and therefore they are not barred by Eleventh Amendment immunity. *Edelman*, 415 U.S. at 663 (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)). The Court will first discuss Plaintiff's claims against Defendant Adams, and then turn to the claims against Defendants Cunningham and Pristash.

### i. *Claims against Sheriff Adams*

Plaintiff has named Defendant Adams in six tort claims, counts V-X. Defendant Adams is immune from these claims under Maryland State law.[5]

Under Maryland law, state officials are "immune from suit . . . for a tortious act or omission that is within the scope of [their] public duties," so long as the officials did not act with malice or gross negligence. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-522(b). To overcome this immunity, a plaintiff must plead more than a conclusion that a defendant acted with "malice" or "gross negligence," or a characterization of a defendant's conduct as "malicious" or "grossly negligent"; she must plead *facts* from which a jury could make those conclusions or

---

[5] The Court must follow substantive Maryland law in addressing these claims, as well as the state law claims against Defendants Cunningham and Pristash, because they are state law claims over which the Court is exercising pendent jurisdiction. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

characterizations themselves. *See Greenbelt Homes, Inc. v. Bd. of Educ. of Prince George's Cty.*, 237 A.2d 18, 24 (Md. 1968); *Baltimore Police Dep't v. Cherkes*, 780 A.2d 410, 438 (Md. Ct. Spec. App. 2001).

"Whether gross negligence exists necessarily depends on the facts and circumstances . . . and is usually a question for the jury." *Cooper v. Rodriguez*, 118 A.3d 829, 846 (Md. 2015) (internal quotation marks omitted). This is true for the question of malice as well. *See Ford v. Baltimore City Sheriff's Office*, 814 A.2d 127, 136 (Md. Ct. Spec. App. 2002) ("Indeed, several other Maryland cases have presented scenarios in which questions of malice, disposed of in summary judgment or by a motion to dismiss, were remanded so that they could be decided by a fact finder.").

A finding of gross negligence or malice may depend on facts and circumstances, but a plaintiff must allege those facts and circumstances in order to survive a motion to dismiss, and, with regard to Defendant Adams' alleged conduct, Plaintiff has not done so. Beyond conclusory allegations that Defendant Adams acted with gross negligence or malice, Plaintiff does not allege any facts from which, if proven, a factfinder could conclude that Defendant Adams acted recklessly or from a place of ill-will towards the Plaintiff. Therefore, insofar as Plaintiff intended to sue Defendant Adams in his individual capacity, her claims against him will be dismissed because he is entitled to statutory state personnel immunity and Plaintiff has not sufficiently alleged that he acted with gross negligence or malice.

### ii. *Claims against Defendants Cunningham and Pristash*

Plaintiff has brought five claims against Defendants Cunningham and Pristash in their individual capacities under state law and two claims against the Defendants under federal law. The Court will address the state law claims first.

1. ***State law claims against Defendants Cunningham and Pristash in their individual capacities***

Turning to Plaintiff's state law claims against Defendants Cunningham and Pristash, the Court will first discuss why these officers are not entitled to the protection of state personnel immunity, and then discuss the Officer Defendants' arguments regarding specific claims.

a. ***State personnel immunity***

Like Defendant Adams, Defendants Cunningham and Pristash are entitled to state personnel immunity under Maryland state law. But, *unlike* the allegations regarding Defendant Adams, Plaintiff alleged facts which, if proven, could serve to overcome that immunity.

State personnel lose their shield of immunity if they act with "malice or gross negligence." Md. Code Ann., Cts. & Jud. Proc. § 5-522(b). "Malice" in this context is the same type of "actual malice" necessary for the recovery of punitive damages in most negligence actions in Maryland, namely "evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill will, or fraud." *Shoemaker v. Smith*, 725 A.2d 549, 559-560 (Md. 1999) (internal quotation marks omitted). Whether a person acted with this type of malice is, at bottom, a question of intent: even when the "conduct is objectively reasonable" the defendant may act with malice when "motivated by ill will [or] an improper motive." *Thacker v. City of Hyattsville*, 762 A.2d 172, 189 (Md. Ct. Spec. App. 2000) (quoting *Shoemaker*, 725 A.2d at 560). This malice can be "established by proof that the officer intentionally performed an act without legal justification or excuse, but [instead] with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Id.* (internal quotation marks omitted).

"Gross negligence" is a harder concept to nail down. *See Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007). "Issues involving gross negligence are often more troublesome than those

involving malice because a fine line exists between allegations of negligence and gross negligence." *Id.* Put as simply as possible, it is "something *more* than simple negligence . . . more akin to reckless conduct." *Id.* (quoting *Taylor v. Harford Cty. Dep't of Soc. Servs.*, 862 A.2d 1026, 1035 (Md. 2004)).

If Plaintiff's allegations are proven true, a factfinder could find that Defendant Cunningham acted from a place of ill will towards Plaintiff. According to Plaintiff's allegations, Defendant Cunningham stopped Plaintiff for no legal reason, was immediately aggressive, confrontational, and rude to Plaintiff when she did not roll her window down completely, and continued to act belligerently towards Plaintiff by dragging her from her car and violently detaining her, despite her small stature and apparently calm and non-threatening demeanor. (*See* Am. Compl. ¶¶ 13, 23-25, 30, 40.) If these allegations were proven, a jury could find that Defendant Cunningham "performed an act without legal justification or excuse, [and] with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Thacker*, 762 A.2d at 189 (internal quotation marks omitted).

There are fewer alleged facts that could demonstrate Defendant Pristash's malicious intent, but there are enough. The Court is unaware of what Defendant Pristash is accused of knowing (or not knowing) when he stopped Plaintiff. So, at least initially, Defendant Pristash perhaps had some reason to suspect Plaintiff of dangerous or aggressive qualities: he would not necessarily have known that (according to the amended complaint) the initial stop was baseless, or that Plaintiff was only 4'6" tall, or that she had been largely compliant at the initial stop. Still, even if the Court makes these inferences in Defendant Pristash's favor, something it is not required to do upon review of *his* motion to dismiss, Plaintiff has alleged that Defendant Pristash violently threw Plaintiff from her vehicle onto the ground and harmed her, and then proceeded to

ransack her car and toss her belongings on the ground. By the time Defendant Pristash allegedly performed these actions he would have been able to see that Plaintiff was, according to her allegations, compliant and non-threatening. A jury could conclude that Defendant Pristash acted in this manner not because of some legal justification, *e.g.*, concern for his safety, or a desire to safeguard evidence, but because of ill will towards the Plaintiff. Thus, Plaintiff has alleged facts that could demonstrate Defendant Pristash acted with malice.

Moreover, Plaintiff has alleged that both Defendants Cunningham and Pristash "instituted and/or continued a criminal proceeding against Plaintiff [and] made materially false statements and omitted material facts," in regard to, or during, those proceedings. (Am. Compl. ¶¶ 94.) These alleged facts could demonstrate malice on behalf of both Defendants Cunningham and Pristash with regard to the criminal prosecution of Plaintiff.

For these reasons, the Court finds that Plaintiff has sufficiently alleged facts that could constitute malice on behalf of both Defendants Cunningham and Pristash with regard to the state tort claims Plaintiff has brought against them. These officers lose their shield of statutory immunity if they act *either* with malice *or* with gross negligence, and therefore, having found that Plaintiff sufficiently alleged facts that could constitute malice, the Court will decline to wade into the murkier examination of whether she pleaded adequate facts to establish "gross negligence."[6]

---

[6] Plaintiff, somewhat confusingly, brought two negligence claims, one for "Negligence" (Count VI) and one for "Gross Negligence" (VII). Defendants did not argue that Plaintiff failed to state a negligence, or "gross negligence," claim. Defendants only argument in favor of dismissing Count VI and VII is that Plaintiff failed to adequately plead malice or gross negligence necessary to overcome statutory immunity. The Court has now found that Plaintiff did adequately plead malice, and thus these claims will not be dismissed due to statutory immunity. The Court remains unclear what Plaintiff sees as the difference between Count VI, negligence performed with gross negligence (*see* Am. Compl. ¶ 86), and Count VII, gross negligence. For now, the Court will simply note that Maryland law "precludes a party from double recovery for a single injury." *Kramer v. Emche*, 494 A.2d 225, 231 (Md. Ct. Spec. App. 1985).

The Officer Defendants contend that Plaintiff has not sufficiently alleged malice or gross negligence because she has offered only conclusions. That is either a misreading of Plaintiff's complaint or a misunderstanding of the law. Plaintiff has alleged numerous facts from which, if proven true, a factfinder could determine that Defendants Cunningham and Pristash acted with malice. She does not, in other words, rest on characterizations of behavior as "malicious," but rather pleads specific facts from which a factfinder could make such a characterization.

**b.  *Specific state law claims***

In addition to arguing that Defendants Cunningham and Pristash are immune from any liability arising from Plaintiff's state tort claims under state personnel immunity, the Officer Defendants also argue that there are particular pleading problems with two such claims: Plaintiff's malicious prosecution claim (Count VIII) and her intentional infliction of emotional distress claim (Count X). The Court will address these claims in that order.

**i.  *Malicious Prosecution***

In order to establish a *prima facie* case of malicious prosecution in Maryland, a plaintiff must show

> (1) the defendant(s) instituted a criminal proceeding against the plaintiff; 2) the criminal proceeding was resolved in favor of the plaintiff; 3) the defendant(s) instituted the criminal proceeding without probable cause; and 4) the defendant(s) acted with malice or for the primary purpose other than bringing the plaintiff to justice.

*S. Mgmt. Corp. v. Taha*, 836 A.2d 627, 637 (Md. 2003). The Officer Defendants argue that Plaintiff's complaint fails to properly allege the second or third element.

Generally speaking, a *nol pros* constitutes a resolution in a plaintiff's (*i.e.* a criminal defendant's) favor for the purposes of a malicious prosecution claim. *See Peters v. City of Mount Rainier*, Civ. No. GJH-14-00955, 2014 WL 4855032, at *11 (D. Md. Sept. 29, 2014)

(citing cases). A resolution of a case in favor of a plaintiff on appeal is still a resolution in the plaintiff's favor. *See State v. Meade*, 647 A.2d 830, 838-39 (Md. 1994) ("Generally, for purposes of this tort, criminal proceedings are regarded as terminated in favor of the accused upon . . . a final order in favor of the accused by a trial *or appellate* court." (emphasis added) (internal quotation marks omitted)).

That charges were *nol prossed*, however, does not mean they were instituted without probable cause. *See Hines v. French*, 852 A.2d 1047, 1058 (Md. 2004). "The effect of the entry of a *nol pros* . . . is not crystalline and the court must look at the circumstances surrounding the State's decision so as to determine whether there was an absence of probable cause." *Id.* One circumstance a court may look to is whether the plaintiff was convicted in the trial court. In fact, "[t]he conviction of the accused by a magistrate or trial court although reversed by an appellate tribunal, conclusively establishes the existence of probable cause, *unless the conviction was obtained by fraud, perjury, or other corrupt means.*" *Zablonsky v. Perkins*, 187 A.2d 314, 316 (Md. 1963) (emphasis added) (quoting Restatement (First) of Torts, § 667).

Plaintiff has satisfactorily alleged the second and third elements of her malicious prosecution claim. She alleged that all of her claims were *nol prossed* on appeal, which constitutes a resolution in her favor. She also alleged that Defendants Cunningham and Pristash "made materially false statements and omitted material facts." (Am. Compl. ¶ 94.)[7] Thus, the Court finds that it need not accept the conviction of Plaintiff in the trial court as conclusive evidence of probable cause. *See Zablonsky*, 187 A.2d at 316.

---

[7] It is not entirely clear from the face of the amended complaint *when* Defendants made these false statements and omissions, but considering the allegation was stated under the heading of Plaintiff's malicious prosecution claim, and that at this stage in the proceedings the Court will make all inferences in the Plaintiff's favor, the Court will infer that, according to Plaintiff's allegations, Defendants Cunningham and Pristash made these false statements and omissions in conjunction with the prosecution of Plaintiff's criminal case.

The Court will not dismiss this claim because Plaintiff has alleged that the criminal case resolved in her favor, and that Defendants Cunningham and Pristash instituted the criminal case without probable cause. The Court notes that it has not been called upon to address, and therefore does not address, any potential differences with regard to probable cause between the various charges brought against Plaintiff, *e.g.*, whether the Officer Defendants had probable cause to initiate a prosecution for eluding or hindering but not for other traffic offenses.

### ii. *Intentional Infliction of Emotional Distress*

The Officer Defendants contend that Plaintiff has pled insufficient facts to establish a claim for intentional infliction of emotional distress. The Court agrees.

Under Maryland law, Plaintiff "must demonstrate (a) intentional or reckless conduct that is (b) outrageous and extreme (c) causally connected to (d) extreme emotional distress." *Vance v. CHF Int'l.*, 914 F. Supp. 2d 669, 682 (D. Md. 2012). "The extraordinary feature of the tort . . . is its insistence upon 'extreme and outrageous conduct.'" *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 607 A.2d 8, 11 (Md. 1992) (internal quotation marks omitted). It is reserved for "truly outrageous conduct," *id.*, conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977) (internal quotation marks omitted). It "is to be used sparingly." *Weathersby*, 607 A.2d at 11. In *Hines v. French*, 852 A.2d 1047 (Md. Ct. Spec. App. 2004), the plaintiff alleged that a police officer pulled her over on the incorrect suspicion that she had committed a hit and run. 852 A.2d at 1052. The plaintiff alleged that the officer was physically rough with her at the traffic stop even though she told the officer she had certain injuries (such as scars from a recent surgery), and that the officer mocked her for expressing pain when she was thrown against the side of her

vehicle and aggressively handcuffed. *Id.* at 1052-53. The court noted that "[a]lthough such behavior, if true, was inappropriate, it [was] not tantamount to atrocious[] and utterly intolerable behavior," and it could not support a claim for intentional infliction of emotional distress. *Id.* at 1060 (internal quotation marks omitted).

Such is the case here. If Plaintiff's allegations are proven true, they show that Defendants Cunningham and Pristash acted inappropriately. Their alleged conduct not only falls short of their duty to uphold the Constitution (as will be discussed below), but on a more basic level evinces callousness and disrespect for a member of the public. Still, it does not rise to the level of "extreme and outrageous" conduct "beyond all possible bounds of decency." Like the allegations in *Hines*, Plaintiff's allegations present a picture of bad behavior, unconstitutional policing and poor judgment, not extreme and outrageous conduct. This claim will be dismissed for failure to sufficiently allege facts supporting the second element.

### 2. *Federal law claims against Defendants Cunningham and Pristash*

Plaintiff has brought two claims against Defendants Cunningham and Pristash under 42 U.S.C § 1983: unlawful search and seizure in violation of her Fourth Amendment rights, and excessive force in violation of her Fourth Amendment rights. Defendants Cunningham and Pristash have answered the second claim, and therefore the Court will only address the viability of Plaintiff's unlawful search and seizure claim. The Officer Defendants contend that Defendants Cunningham and Pristash are entitled to qualified immunity on this claim and therefore it should be dismissed. They are incorrect.

"Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Thus, "[q]ualified immunity protects government officials from civil damages in a § 1983 action 'insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether Defendants are entitled to qualified immunity requires a two-pronged inquiry: "First, the Plaintiff must show the violation of a constitutional right. Second, the court must decide whether the right at issue was clearly established at the time of [the] alleged misconduct." *Artiga Carrero v. Farrelly*, 270 F. Supp. 3d 851, 866-67 (D. Md. 2017) (internal citations and quotation marks omitted). The Court "has discretion to determine 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). The Court will now turn to the specific alleged constitutional violations, beginning with the initial traffic stop and search of Plaintiff's vehicle.

### a. *The initial traffic stop and the search of Plaintiff's vehicle*

With regard to the initial traffic stop and the later search of Plaintiff's vehicle subsequent to her arrest, the Court will begin with the first prong—whether Plaintiff has alleged a violation of her constitutional rights—before turning to the question of whether the allegedly violated rights were clearly established.

### i. *Were these constitutional violations?*

The Court will first address whether the initial traffic stop was constitutional, and then turn to the search of Plaintiff's vehicle.

### 1. *The initial traffic stop*

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the

meaning of [the Fourth Amendment]." *Wren v. U.S.*, 517 U.S. 806, 809-10 (1996). Such a stop must therefore be "reasonable," *see* U.S. Const. amend IV (protecting against "unreasonable searches and seizures"), and "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Wren*, 517 U.S. at 810. Thus, as a general matter, a decision to stop an automobile is *unreasonable* where the police *do not* have probable cause to believe that a traffic violation has occurred (absent, of course, probable cause to believe that some other crime has been committed or is in progress).

Plaintiff alleges that she was "a seat belted driver, carefully and prudently[] operating her vehicle" when she was pulled over by Defendant Cunningham. (Am. Compl. ¶ 13.) Under those conditions, which the Court must accept as fact given the nature of the motion, there was no probable cause to stop Plaintiff for a traffic violation.

The Officer Defendants argue that given Plaintiff's allegations "there can be no question that Plaintiff engaged in conduct which gives rise, at a bare minimum, to probable cause to believe that Plaintiff was engaged in several crimes." (Reply 2, ECF No. 25.) But the crimes the Officer Defendants are referring to are "obstructing and hindering" and four traffic offenses, including "attempt by driver to elude uniformed police by failing to stop," and "attempt to elude police in official police vehicle by failing to stop." (*Id.*) These refer to events *after* Plaintiff was stopped by Defendant Cunningham. Defendants also refer to two other traffic offenses, "failure to obey a properly placed traffic control device," and "failure to drive right of center." (*Id.*) Perhaps these refer to Plaintiff's behavior *prior* to being stopped by Defendant Cunningham; *i.e.* perhaps the Officer Defendants contend that Plaintiff failed to stop at a light (or ignored some other traffic signal) and wandered in her lane, and those offenses are why Defendant

Cunningham initiated the traffic stop. But even assuming this *is* the Officer Defendants' argument (which is not clear from their papers), it is still just that: an argument. On the face of Plaintiff's complaint, there is "no question" that Plaintiff was *not* engaged in these crimes *prior* to being pulled over by Defendant Cunningham. Therefore, Plaintiff's amended complaint sufficiently alleges that her constitutional rights were violated with regard to the initial traffic stop.

### 2. *The search of Plaintiff's vehicle*

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

One such exception is an "inventory search." *See U.S. v. Matthews*, 591 F.3d 230, 234 (4th Cir. 2009). "Police officers frequently perform inventory searches when they impound vehicles or detain suspects." *Id.* at 235. These searches are designed to "protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Id.* (quoting *Colorado v. Bertine*, 479 U.S. 367, 372 (1987)). For the exception to apply, "the search must have be[en] conducted according to standardized criteria, such as a uniform police department policy, and performed in good faith." *Id.* (internal citations and quotation marks omitted).

Another exception to the warrant requirement is a search performed incident to a lawful arrest. "The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Gant*, 556 U.S. at 338. The purpose behind this exception is important, because a search that exceeds the boundaries of that which is necessary to

ensure officer safety and evidence preservation does not fall within the exception. Thus, "a search incident to arrest may only include the arrestee's person and the area within his immediate control." *Id.* at 339 (internal quotation marks omitted). Furthermore, "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Id.* at 343 (internal quotation marks omitted). The bottom line, then, is that "an automobile search incident to a recent occupant's arrest is constitutional (1) if the arrestee is within reaching distance of the vehicle during the search, or (2) if the police have reason to believe that the vehicle contains evidence relevant to the crime of arrest." *Davis v. U.S.*, 564 U.S. 229, 234-35 (2011) (internal quotation marks omitted).

Defendants Pristash and Cunningham did not have a warrant to search Plaintiff's car. They justify that search on the grounds that they arrested Plaintiff for fleeing the initial stop and performed an inventory search. (*See* Officer Defendants' Mot. Dismiss Mem. Supp. at 14-15.)

Assuming, without deciding, that the arrest of Plaintiff was constitutionally permissible, the facts as pled do not support the conclusion that Defendants Cunningham and Pristash performed a valid inventory search of the vehicle. Plaintiff has alleged that, before formally arresting Plaintiff and taking her into police custody, *i.e.*, while she was still on the ground next to her vehicle, and before Defendants Cunningham and Pristash decided to impound her vehicle (if they did so at all), Defendants Cunningham and Pristash ransacked her vehicle, throwing her belongings onto the ground and about her vehicle in a careless manner. Plaintiff does not allege, nor it is reasonable to infer, that these actions were taken pursuant to standardized criteria, that Defendants made a list of the items "inventoried," or, on a more fundamental level, that this search was performed in good faith with the intent "to protect [Plaintiff's] property while it is in

the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Matthews*, 591 F.3d at 235; *see also United States v. Brown*, 787 F.2d 929, 932 (4th Cir. 1986) ("[T]he police may inventory the vehicle, if such inventories are routine and conducted pursuant to standard police procedures, *so long as the purpose* . . . is to secure the car or its contents and not to gather incriminating evidence against the owner." (emphasis added)).

On the topic of guarding the police from danger, the Court will briefly note that the search incident exception does not help the Defendants here, at least with regard to the search of Plaintiff's vehicle. At the time of the search, Plaintiff, a 4'6" tall woman, was handcuffed on the ground outside of her vehicle. Defendants Cunningham and Pristash argue they had probable cause to suspect Plaintiff of the crime of eluding police officers. Based on those alleged facts, Plaintiff was not within reaching distance of the vehicle, and Defendants Pristash and Cunningham had no reason to believe that the vehicle contained evidence relevant to the crime that they had just, arguably, witnessed.

### ii. *Were these constitutional rights clearly established?*

When determining whether a right was clearly established for qualified immunity purposes, the Court must identify the specific right "at a high level of particularity." *Edwards*, 178 F.3d at 251. "In determining whether a right was clearly established at the time of the claimed violation, courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, [the] court of appeals [for the Fourth Circuit], and the highest court of the state in which the case arose . . . ." *Id.* (internal quotation marks omitted)).

Defined at a "high level of particularity," the first right allegedly violated by Defendant Cunningham is the right of a person to be free from seizure when she is not violating any laws,

acting in any manner that would give a police officer reasonable suspicion that she is violating any laws, and when the police officer has no independent basis for suspecting her of violating any laws nor is engaged in any type of investigation related to the person. This right was clearly established at least as early as the Supreme Court's decision in *Whren v. United States*. The second right allegedly violated by Defendants Cunningham and Pristash is the right of a person to be free from a search of her vehicle when she is handcuffed some distance from the vehicle and the officers performing the search have no reason to suspect that she can access dangerous weapons in the vehicle, have no reason to suspect that there is evidence of a crime in the vehicle, and are not conducting an inventory of the vehicle's contents prior to impounding or otherwise taking possession of the vehicle. This right was clearly established subsequent to the Supreme Court's decisions in *Arizona v. Gant* and *Colorado v. Bertine*, if not earlier.

According to Plaintiff's amended complaint, Defendants Cunningham and Pristash violated Plaintiff's clearly established constitutional rights when Defendant Cunningham initially stopped Plaintiff and when they both searched Plaintiff's vehicle subsequent to her arrest. Therefore, Defendants Cunningham and Pristash are not entitled to qualified immunity from Plaintiff's Section 1983 search and seizure claim insofar as it is based on this conduct.

**b.** ***Plaintiff's arrest and the search of her person***

In analyzing whether the Officer Defendants are entitled to qualified immunity from Plaintiff's unlawful search and seizure claim insofar as it arises from her arrest and the subsequent search of her person, the Court will begin, and conclude, its analysis with the second prong—whether the specific rights allegedly violated were clearly established at the time of the alleged violation. They were not.

Defendants Cunningham and Pristash arrested Plaintiff (when they stopped her for a second time) at least in part because she pulled away from the initial, allegedly illegal and baseless, traffic stop. It is unclear if Plaintiff has a constitutional right not to be arrested in such circumstances.

Maryland courts have held that "there is no right to resist an 'illegal' stop" under the United States Constitution. *Barnhard v. State*, 587 A.2d 561, 528 (Md. Ct. Spec. App. 1991); *see also Hicks v. State*, 984 A.2d 246, 253 (Md. Ct. Spec. App. 2009). And federal courts have held that "[i]f a suspect's response to an illegal stop 'is itself a new, distinct crime, then the police may constitutionally arrest the [suspect] for that crime.'" *U.S. v. Sprinkle*, 106 F.3d 613, 619 (4th Cir. 1997) (quoting *United States v. Bailey*, 691 F.2d 1009, 1017 (11th Cir. 1982)). Based on these premises, one could argue Plaintiff had no right to resist the illegal stop and her act of fleeing the scene was an intervening illegal act that provided probable cause for the officers to arrest her. *See DiPino v. Davis*, 729 A.2d 354, 362 (Md. 1999) (defining the elements of the offense of hindering).

But that argument rests on infirm ground, for two reasons. First, although *Maryland* courts have clearly held that a person has no right to resist an illegal stop, this Court is not bound by a state court's interpretation of the United States Constitution. The parties have not presented the Court with any *federal* caselaw clearly holding that a person has no right to resist an illegal stop, and the Court has found none. In *Smith v. Wolfe*, Civ. No. CCB-16-2956, 2017 WL 281993 (D. Md. Jan. 23, 2017), a Judge of this Court held (in the context of reviewing a habeas petition) that "an individual may not *use force* to resist an illegal stop." 2017 WL 281993, at *7 (emphasis added). That, however, is a different issue (and a well settled one, *see Sprinkle*, 106 F.3d at 619 (finding that a fleeing suspect firing a handgun at a police officer was an intervening

illegal act); *see also U.S. v. Crump*, 62 F. Supp. 2d 560, 568 (D. Conn. 1999) (citing cases standing for the proposition that violence against a police officer is an intervening illegal act)). Plaintiff here does not allege that she used any force.

Which brings the Court to the second reason it hesitates to find that Plaintiff's constitutional rights were not violated when she was arrested: this case is factually distinguishable in important respects from other cases involving resistance to illegal stops. The Maryland state cases holding that a person had no right to resist an illegal stop involved instances where the person resisting did so by assaulting the police officer. *See, e.g.*, *Hicks*, 984 A.2d at 253; *Barnhard*, 587 A.2d at 521-22.[8] This is true for the analogous federal cases as well. *See, e.g.*, *Sprinkle*, 106 F.3d at 619; *United States v. Bailey*, 691 F.2d 1009, 1012 (11th Cir. 1982) (person resisted by striking officer and attempting to grab officer's firearm). Here, not only did Plaintiff not use any force against either Defendant Cunningham or Defendant Pristash (according to her amended complaint), but she also allegedly left the scene because she was scared of Defendant Cunningham's threatening behavior. A person may not have a right to violently resist a pat-down simply because it was not based on probable cause or reasonable suspicion, but that conclusion is some distance from holding that a person has no right to extricate herself from a dangerous situation resulting from the unconstitutional actions of a police officer.

The Court need not, however, address this issue definitively, as it suffices to note that neither the Supreme Court nor the Court of Appeals for the Fourth Circuit has clearly dealt with it. *See Edwards*, 178 F.3d at 251. Moreover, Maryland courts *have* dealt with the issue, and in a

---

[8] In *Barnhard*, the Maryland Court of Special Appeals did not hold that a particular person did not have a right to resist a particular stop, but rather that people do not have a right to resist illegal stops, and that it was proper for the trial court to so instruct the jury. Still, the facts of the case on appeal, and the facts of the cases the court cited to, involved physical violence against police officers.

manner that suggests Defendants Cunningham and Pristash did not act unconstitutionally.

*Barnhard*, 587 A.2d at 528; *Hicks*, 984 A.2d at 253; *see Edwards*, 178 F.3d at 251 (noting that courts may look to state court decisions to determine if a right is clearly established); *Bradshaw v. Zebella*, No. 85 C 6151, 1987 WL 19545, at *5 n.4 (N.D. Ill. Oct. 30, 1987) (noting, in the context of determining whether a right was clearly established, that "local law enforcement officials would be particularly aware of and sensitive to state court interpretations of Fourth Amendment requirements."). Therefore even if Defendants Cunningham and Pristash could not have constitutionally arrested Plaintiff for resisting an illegal stop, the Court finds that Plaintiff's right to resist the stop and be free from an arrest resulting from that resistance was not a clearly established right.

Thus, the Court finds that Defendants Cunningham and Pristash are entitled to qualified immunity from Plaintiff's search and seizure claim insofar as it is based on the allegedly unconstitutional arrest of Plaintiff. It follows that these Defendants are entitled to qualified immunity from Plaintiff's claim insofar as it is based on the allegedly unconstitutional search of her person as well. Unlike the search of Plaintiff's vehicle, whether the search of Plaintiff's person was constitutional depends on the constitutionality of the arrest.[9] If the arrest was constitutional, then the Officers could search her person incident to that arrest. *See Gant*, 556 U.S. at 339 (noting that "a search incident to arrest may only include the *arrestee's person* and the area within his immediate control." (emphasis added) (internal quotation marks omitted)). Therefore, because Plaintiff's right to be free from the arrest was not clearly established, her right to be free from the search of her person incident to that arrest was similarly unclear. Thus, Defendants Cunningham and Pristash are entitled to qualified immunity from Plaintiff's Section

---

[9] With regard to the search of Plaintiff's vehicle, if the arrest was unconstitutional neither the inventory exception nor the search incident exception would apply. If the arrest was constitutional, then these exceptions still do not apply, for the reasons explained above.

1983 search and seizure claim insofar as it is based on the allegedly unconstitutional arrest or search of her person incident to that arrest.

**IV.** *Conclusion*

For the reasons stated, the Court will grant the State's motion to dismiss, and dismiss Counts III and IV against the State under Federal Rule of Civil Procedure 12(b)(6), and dismiss Counts V-X against the State under Federal Rule of Civil Procedure 12(b)(1). The Court will grant in part the Officer Defendants' motion to dismiss and dismiss Counts I-II and V-X against the Officer Defendants in their official capacities under Rule 12(b)(1), dismiss Count X against the Officer Defendants in their individual capacities under Rule 12(b)(6), and dismiss Counts V-IX against Sheriff Adams in his individual capacity under Rule 12(b)(6). The Court will deny in part the Officer Defendants' motion to dismiss, and Defendants Pristash and Cunningham will be ordered to answer Count I, insofar as the claim is based on the initial stop of Plaintiff and the search of her vehicle, and Counts VI-IX within the time allotted under Rule 12(a)(4).

DATED this 20th day of July, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge