IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TALATHA SHERRILL                                    *

                                                                                                                        *

         Plaintiff,

                                                                  *     1:18-cv-00476-JKB

v.

                                                                                       *

DEPUTY JOSEPH CUNNINGHAM, et al.,
                                                                                                 *

         Defendants.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**<u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT</u>**

        I.        SUMMARY OF ARGUMENT

Defendants Pristash and Cunningham ignored their training that civilians sometimes flee from the police because of fear of the police. However, Plaintiff Talatha Sherrill found herself terrified after a profanity-filled encounter with Defendant Cunningham on the side of a dark road where she was alone. Thus, she fled in her vehicle at a slow rate of speed. As she fled, the Defendants had no reason to believe she was armed or about to hurt anyone but questioned her motivation for fleeing. As Ms. Sherrill drove a low-rate of speed, Defendant Pritash cut off Ms. Sherrill's path of travel. The Defendants then immediately yanked Ms. Sherrill out of her vehicle and slammed her face first to the ground, sending her glasses flying into the street. As she lay defenseless, Defendant Cunningham twisted her right arm with such force that he fractured her elbow.

After handcuffing Ms. Sherrill outside of the vehicle – and outside of the reach of the interior of the vehicle - the officers were perplexed as to the reason Ms. Sherrill was in Cecil

County and fleeing the police. Thus, they asked her several times to explain herself. To investigate the reasons for which she was in Cecil County and fleeing the police, the officers searched her vehicle under the guise of an inventory search. There was no contraband found in her vehicle although the officers went so far as to dig through Christmas gift bags that were in her car. After realizing that Ms. Sherrill truly feared the police and fled as a result thereof, the officers are now seeking to justify their behavior by claiming Ms. Sherrill did not have a clearly established right to be free from excessive force in twisting her arms behind her back during an arrest. However, the Defendants cannot meet their burden of proof and persuasion as it relates to qualified immunity given precedent in this jurisdiction regarding excessive force in twisting a suspect's arm and slamming a suspect to the ground. In an unsupported effort to extend established jurisprudence, the Defendants ask this Court to rely on the "hard take down" line of cases, which has nothing to do with physically taking a suspect to the ground. This Court should see through the Defendants' attempts and deny their Motion in part.[1]

II.     FACTUAL BACKGROUND

Ms. Sherrill, a four foot six, one hundred forty-pound woman, was driving in Cecil County on January 14, 2016.  See Ex. 3 at 16 and Ex. 5. Ms. Sherrill owned a psychiatric rehabilitation counseling service and she had just left a client's home. Ex. 3 at 15 and 28. She was driving home given that she had no other clients to visit. Ex. 3 at 30. While driving home, Ms. Sherrill was talking to her pastor using an earpiece. Ex. 3 at 34. It was normal for her to have a conversation with her pastor, Felicia Bell, toward the end of the work day to discuss Ms. Sherrill's activities for the day and issues related to the church. Ex. 3 at 51. Ms. Sherrill was

---

[1] Plaintiff does not oppose Defendants' Motion as it relates to Count I's allegation of unlawful arrest after the second traffic stop and Count VIII (malicious prosecution).

compliant with the speed limit in that she was driving between 50 and 55 miles per hour where the speed limit was 55 miles per hour. Ex. 4 at 143 and Ex. 3.

The first time Defendant Cunningham saw Ms. Sherrill's vehicle, it was slowing down to navigate a curve in the road. Ex. 2 at 24. Despite the fact that Ms. Sherrill was driving between 50 and 55 miles per hour in a 55 MPH zone, Defendant Cunningham activated his sirens and pulled Ms. Sherrill over. Ex. 4 at 143 and Ex. 3. Ms. Sherrill did not speed up once Defendant Cunningham activated his lights and sirens. Ex. 2 at 28. Instead, Ms. Sherrill activated her turn signal and pulled over near the intersection of Route 1 and Route 222. Ex. 2 at 26 and 27.

Ms. Sherrill waited in her vehicle for approximately five minutes before Defendant Cunningham approached. Ex. 3 at 41. By the time Defendant Cunningham approached her vehicle, Ms. Sherrill already had her license and registration in her hand. Ex. 3 at 45. Ms. Sherrill had her window partially rolled down and attempted to hand Defendant Cunningham her license and registration through the window. Id. Defendant Cunningham pushed her hand back through the window and told her to "roll [her] fucking window down." Id. Ms. Sherrill told Defendant Cunningham, "I have my credentials right here, sir." Id. The encounter escalated to where Defendant Cunningham told Ms. Sherrill, "if you don't roll your fucking window down, I'm going to bust your window." Id. She tried to explain to him that her window was rolled down. Id. Then, Defendant Cunningham told Ms. Sherrill to get out of the car. Id. Ms. Sherrill asked him to call for back up and he replied, "negative." Id. She asked whether they could go to a well-lit area, and he told her, "you're not going anywhere." Id. 45-46. Defendant Cunningham further told her to get out of the car or he would "drag [her] ass out of the car." Id. at 46. Ms. Sherrill pleaded with Defendant Cunningham to give her a ticket. Id. Defendant Cunningham admits Ms. Sherrill never threatened him during this traffic stop. Ex. 2 at 40.

Defendant Cunningham began putting on gloves and reaching for an item. Ex. 3 at 48-49. At that point, Ms. Sherrill, alone on a dark road with a police officer that was yelling and cursing at her, did not know what Defendant Cunningham was reaching for. Id. Thus, she was afraid he would "put a bullet in [her] head and leave [her] in the woods." Id. at 49. Defendant Cunningham took one step back and Ms. Sherrill drove away from the scene in fear. Id. Ms. Sherrill describes herself as "terrified" at the time she ran from Defendant Cunningham. Ex. 3 at 67.

Officers with the Cecil County Sherriff's Office are trained that persons flee from the police because they are afraid of the police. Ex. 2 at 43.

Ms. Sherill did not want Defendant Cunningham to be able to claim she was speeding, so she looked at her odometer and noticed it was at 32 miles per hour. Ex. 3 at 50. At this time, Defendant Pritash was seated inside of his car after having just bought coffee from Royal Farms. Ex. 1 at 15-16. He heard over the radio that a vehicle had fled Defendant Cunningham and had possibly been called out by an undercover officer. Ex. 1 at 14. Defendant Pristash was unsure as to whether Ms. Sherrill's vehicle was the vehicle that was identified over the radio by an undercover officer. Id. Thus, Defendant Pritash activated his lights and sirens and sat in his vehicle waiting for Defendant Cunningham and Ms. Sherril. Ex. 1 at 15-16. Ms. Sherrill was driving toward a Royal Farms Defendant Pristash pulled into the street when Ms. Sherrill got close to him. Ex. 1 at 18. Defendant Pristash and Ms. Sherrill's vehicles came close to colliding as they met at the same point. Ex. 1 at 14-15. Ms. Sherrill stopped her vehicle so as not to hit Defendant Pristash. Id. Defendant Pristash exited his vehicle and approached Ms. Sherrill's vehicle. Ex. 1 at 19. At that time, Defendant Pristash did not have any information that Ms. Sherrill was armed. Ex. 1 at 11 and Ex. 2 at 88. There was no information she was violent or wanted for any violent offense. Id. There was no information she had committed a crime in the

past. Ex. 1 at 12 and Ex. 2 at 88. There was no indication Ms. Sherrill was involved with any drug offense. Ex. 2 at 17.

Immediately after Defendant Pristash cut off Ms. Sherrill, he approached Ms. Sherrill's car door and yanked open the door. Ex. 3 at 57. He immediately started pulling Ms. Sherrill out of the car while simultaneously saying, "get out of the car." Ex. 3 at 57-58. Defendant Pristash claims Ms. Sherrill simply did not listen to his commands but characterizes this as active resistance as opposed to passive resistance. Ex. 1 at 28. Defendant Cunningham claims Ms. Sherrill did not listen to the verbal commands but describes it as passive resistance. Ex. 2 at 72-73. At this time, both Defendants grabbed Ms. Sherrill to pull her out of the car at the same time. Ex. 1 at 30-31. Defendant Cunningham admits to grabbing Ms. Sherrill's right arm and pulling her out of her car. Ex. 2 at 69.

Defendants yanked Ms. Sherrill out of her vehicle and threw her to the ground, smashing her face to the ground and rubbing it into the ground. Ex. 3 at 58. When Ms. Sherrill hit the ground, she landed on the right side of her face, thereby scarring the right side of her face. Ex. 3 at 112. She was thrown to the ground with such force that her glasses, earrings, and wedding ring all flew off her body. Ex. 3 at 60. After being thrown to the ground, Ms. Sherrill never put her arms underneath of her stomach. Ex. 4 at 182. Defendant pressed his gun against the left side of Ms. Sherrill's temple. Ex. 3 at 61. Defendant Pristash admits to grabbing Ms. Sherrill's right arm and putting it behind her back. Ex. 1 at 34. Defendant Cunningham twisted Ms. Sherrill's right arm and caused a sharp pain that went up and threw her entire arm. Ex. 3 at 109-110. After handcuffing Ms. Sherrill, she complained of pain to her right elbow, so the officers called an ambulance. Ex. 9 at 49.

As a result of being thrown to the ground and the twisting of her right arm, Ms. Sherrill's elbow was swollen like a softball, she had bruises to her face, and gravel stuck in her skin. Ex. 3 at 93-94. Ms. Sherrill was taken by ambulance to Union Memorial emergency room where she was noted to suffer from a right elbow sprain and given a sling. Ex. 3 at 79 an Ex. 6. The following day, after being released from detention, she sought treatment and was given a hard cast for her elbow. Ex. 3 at 96. After seeking follow up treatment at Upper Chesapeake, an orthopedic surgeon, Dr. Kenneth Lippman, notes she suffered a right coronoid fracture accompanied by constant pain, numbness, tingling sensations, and limpness in her right arm. Ex. 6. Dr. Lippman further notes decreased grip strength and decreased range of motion in her right arm. Ex. 6.

At the time the officers pulled Ms. Sherrill's arms behind her back, there was nothing specific about Ms. Sherrill indicating she was going to hurt the Defendants. Ex. 1 at 36. Given that there was nothing specific about Ms. Sherrill indicating she was going to hurt the officers, Defendant Pristash thought it was possible that Ms. Sherrill may hurt the officers and it was possible that she would not hurt the officers. Ex. 1 at 36. Since there was nothing unique about Ms. Sherrill indicating she was going to hurt the Defendants, Defendant Pristash thought the possibilities were "endless." Ex. 1 at 36. At this time, Defendant Cunningham states, "When I thought it was a possibility that she was armed -- *I wouldn't say I specifically thought she was armed*." Ex. 2 at 76 (Emphasis added). Defendant Cunningham admits he knew it was possible Ms. Sherrill was unarmed. Ex. 2 at 83.

After Ms. Sherrill was thrown to the ground and was handcuffed, officers moved her car to the side of the road. Ex. 3 at 66-67. Defendant Cunningham performed a search of Ms. Sherrill's vehicle under the "assumption" her vehicle would be towed. Ex. 2 at 94. Ms. Sherrill's car was

not towed. Ex. 8 at 233. Defendant Pristash participated in this vehicle search. Ex. 3 at 70. There is no Cecil County Sherriff's Office written policy on inventory searches. Ex. 2 at 94. There was no contraband and nothing illegal in Ms. Sherrill's vehicle. Id. at 95. However, the officers dumped Christmas gift bags and scattered items all around the car. Ex. 9 at 158. Additionally, the Defendants searched Ms. Sherrill's car along with other officers, who were asking Ms. Sherrill to tell the officers the reason she was in Cecil County. Ex. 4 at 155-156. Officers then indicated they needed to find materials that Ms. Sherrill was in Cecil County for her stated reason, noting they were looking for a "business card" or something to prove she was in Cecil County for her job. Ex. 4 at 155-156. After searching and finding nothing illegal, Defendant Pristash moved Ms. Sherrill's car to the side of the road and Defendant Cunningham returned her car keys. Id. at 233-234.

Publicly available information shows Ms. Sherrill was charged in connection with this incident in case number 2K00075049. After an appeal, the State entered a *nolle prosequi* to all charges against Plaintiff in Cecil County Circuit Court, case number 07-K-16-000864. Ex. 8.

### III.   LEGAL STANDARD

Summary judgment, under Fed. R. Civ. P. 56, should be denied where material factual issues may be reasonably resolved in favor of the non-moving party. "It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir.2008). In other words, if there clearly exists factual issues 'that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party,' summary judgment is inappropriate. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir.2001). *Dent v. Montgomery Cty. Police Dep't*, 745 F. Supp. 2d 648, 654–55 (D. Md. 2010).

## IV.   ARGUMENT

### a.   Summary Judgment Should Be Denied As To Count I

1. *There is a genuine dispute of material fact as to whether Plaintiff was exceeding the speed limit prior to the initial seizure*

Contrary to the Defendants' allegations, there is a dispute as to whether Defendant Cunningham's initial seizure of Plaintiff was unlawful because she does not concede she was speeding. Summary judgment is inappropriate where there is a genuine issue of material fact as to whether a police officer reasonably believed that a driver was speeding or violating traffic laws when the officer conducts a traffic stop. *Martin v. Conner*, 882 F. Supp. 2d 820 (D. Md. 2012). In *Martin*, where the driver maintained he was driving in accordance with traffic laws, the Court denied summary judgment. The same result is required here.

Here, Ms. Sherrill was compliant with the speed limit in that she was driving between 50 and 55 miles per hour where the speed limit was 55 miles per hour. Ex. 4 at 143 and Ex. 3. Defendant Cunningham's disagreement (i.e., that Ms. Sherrill was speeding) epitomizes a genuine dispute of material fact. Accordingly, summary judgment should be denied as to Count I insofar as it relates to Defendant Cunningham unlawfully seizing Plaintiff during the initial traffic stop.

2. *There is a genuine dispute of material fact as to whether the Defendants Were Looking for Contraband When They Searched Plaintiff's Vehicle*

Unquestionably, "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida. v. Wells*, 495 U.S. 1, 4 (1990). Here, there is

a dispute as to whether the Defendants searched Ms. Sherrill's vehicle to satisfy their suspicions as to the reason she fled from the police. First, the Defendants maintain Ms. Sherrill was seen driving her car out of a high crime area. Dkt. 50-1 at 4. The Defendants were suspicious as to the reason(s) for which Ms. Sherrill fled as evidenced by Defendant Cunningham's allegation that people usually run "for a reason". See Dkt. 50-1 Ex H. Defendant Cunningham's suspicion of Ms. Sherrill's motivation is further indicated by his allegation that Ms. Sherrill is "the only person who has ever run from a traffic stop saying it was because she was afraid of the police." See Dkt. 50-1 Ex H. Additionally, the Defendants searched Ms. Sherrill's car along with other officers, who were asking Ms. Sherrill to tell the officers the reason she was in Cecil County. Officers then indicated they needed to find materials that Ms. Sherrill was in Cecil County for her stated reason (i.e., a business card). Ex. 4 at 155-156. Then, the officers through Christmas gifts around the car during the search. A reasonable inference is that the Defendants were questioning Ms. Sherrill's reasoning for being in a high crime area and were looking for evidence of a crime when they searched her car. Hence, the officers looked for a "business card", told her they needed to confirm her reasoning for being in Cecil County, and threw Christmas gifts all over the vehicle. Accordingly, summary judgment is inappropriate as to Count I insofar as it claims an unlawful vehicle search.

> 3. *There is a genuine dispute as to whether the vehicle search was incident to a lawful arrest*

"Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." *Arizona v.*

*Gant*, 556 U.S. 332, 351, (2009). There can be no legitimate argument that Ms. Sherrill, who had already been thrown to the ground and handcuffed, could reach the inside of the vehicle's compartment. Moreover, the officers admit there is no indication she was involved with a drug offense. There was no indication Ms. Sherrill was armed. There was no information she was violent or wanted for any offense. There was no information she had committed a crime in the past. Thus, there was no probable cause she was concealing contraband in her car. Accordingly, summary judgment is inappropriate as to Count I insofar as it claims an unlawful vehicle search.

    **b. Summary Judgment Should Be Denied As To Count II (Excessive Force)**

        1. *There is a genuine dispute as to the unreasonableness of Defendants' throwing Ms. Sherrill to the ground and twisting her right arm with such force as to fracture her elbow*

"The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003). "A court determines whether an officer has used excessive force to effect a seizure based on a standard of objective reasonableness." *Id*. This inquiry does "not consider the officer's intent or motivation." *Id*. citing *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir.1996). "Rather, the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Id*. quoting *Graham v. Connor*, 490 U.S. 386 (1989).

The *Graham* factors include, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. The extent of the plaintiff's injury is also a relevant consideration. *Jones v. Buchanan*, 325 F.3d at 527. Analyzing the *Graham* factors, there is a dispute as to the reasonableness of the Defendants' actions.

The first Graham factor weighs in Plaintiff's favor. Fleeing and eluding is a misdemeanor. Md. Code Ann., Transp. § 21–904(c). See also *Stutzman v. Krenik*, 350 F. Supp. 3d 366, 382 (D. Md. 2018). In analyzing the severity of this misdemeanor, there was no indication Ms. Sherrill was armed while committing this misdemeanor. There was no information she was violent or wanted for any violent offense. There was no information she had committed a crime in the past. Significantly, the Defendants were trained that people flee the police out of fear. Accordingly, the Defendants were arresting Ms. Sherrill for the non-violent misdemeanor offense of fleeing and eluding. Hence, this factor weighs in Ms. Sherrill's favor.

As to the second factor, there is a dispute as to whether Ms. Sherrill posed a danger to the Defendants. Unquestionably, a fact-finder could reasonably determine that an unarmed 4'6 woman with no criminal history posed no danger to the Defendants. Underscoring the lack of danger, there was nothing particularized about Ms. Sherrill to indicate to the officers she was armed or was going to hurt the Defendants. Ex. 1 at 36. Given that there was nothing specific about Ms. Sherrill indicating she was going to hurt the officers, Defendant Pristash thought it was possible that Ms. Sherrill may hurt the officers and it was possible that she would not hurt the officers. Ex. 1 at 36. In accordance with the lack of particularized suspicion related to Ms. Sherrill, the possibilities were "*endless*" as opposed to probable that Ms. Sherrill was going to hurt an officer. Ex. 1 at 36 (Emphasis added). Moreover, Defendant Cunningham states, "When I thought it was a possibility that she was armed -- *I wouldn't say I specifically thought she was armed*." Ex. 2 at 76 (Emphasis added). Defendant Cunningham significantly admits he knew it was possible Ms. Sherrill was unarmed. Ex. 2 at 83. Lastly, Ms. Sherrill squarely denies putting her arms under stomach. Ex. 4 at 182. Given the lack of specificity that Ms. Sherrill was

armed or going to hurt an officer and the squarely disputed fact that Ms. Sherrill did not put her arms under her stomach, the second *Graham* factor cuts in Ms. Sherrill's favor.

As to the third *Graham* factor, there is a dispute of genuine fact as to whether Ms. Sherrill was actively resisting at the time the officers used force. As indicated above, Ms. Sherrill squarely denies putting her arms under stomach. Moreover, Ms. Sherrill maintains she was not given verbal commands prior to be yanked out of the car at the second stop. Instead, the officers simultaneously yanked her out of the car and told her to get out of the car. Further highlighting the disputed facts as to Plaintiff's passive resistance, the Defendants internally disagree as to whether Ms. Sherrill actively resisted when she allegedly refused to get out of the car. Defendant Pritash claims Ms. Sherrill actively resisted by simply failing to listen to his commands to exit the vehicle. Defendant Cunningham claims Ms. Sherrill did not listen to the verbal commands but describes it as passive resistance. Thus, there are at least three disputed material facts related to the third *Graham* factor (1) there is a dispute as to whether Ms. Sherrill put her arms under her stomach (2) there is a dispute as to whether Ms. Sherrill was given a verbal command to exit the vehicle at the second stop while the officers were simultaneously yanking her out of the car or prior to yanking her out of the car and (3) there is a dispute as to whether merely failing to get out of the car constitutes active resistance. Accordingly, the third Graham factor weighs against summary judgment and in favor of Ms. Sherrill.

Lastly, the extent of Ms. Sherrill's injuries weigh in her favor. She suffered a right coronoid fracture accompanied by constant pain, numbness, tingling sensations, and limpness in her right arm. Ex. 6. Dr. Lippman further notes decreased grip strength and decreased range of motion in her right arm. Ex. 6.  In *Smith v. Murphy*, 634 F. App'x 914, 917 (4th Cir. 2015), the Fourth Circuit upheld the denial of summary judgement in a case where the injuries were "de

minimis." Id. Here, the injuries are much more than *de minimus* as evidenced by her diagnosis. Accordingly, the extent of Ms. Sherrill's injuries weigh against summary judgment and in favor of Ms. Sherrill.

> 2. *This Court should decline to extend qualified immunity because the Defendants have failed to meet their burdens of proof and persuasion to show Ms. Sherrill's rights were not clearly established*

Assessing a claim of qualified immunity requires an analysis as to "(1) whether the facts alleged, taken in the light most favorable to the party asserting the injury... show the officer's conduct violated a constitutional right; and (2) whether the right at issue was clearly established in the specific context of the case—that is, whether it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted." *McDaniel v. Arnold*, 898 F. Supp. 2d 809, 832 (D. Md. 2012) (Internal citations omitted). Although addressing the first question prior to addressing the second "is often appropriate," it is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In this case, as contemplated by *Pearson*, it is appropriate to address the first question prior to addressing the second. This case does not present such a novel legal argument so as to render the "clearly established" question a priority over the threshold question of constitutionality.

As a starting point, a "plaintiff bears the burden of proof on the first question—i.e., whether a constitutional violation occurred." *Henry v. Purnell*, 501 F.3d 374, 377 (4th Cir. 2007) (Internal citations omitted). Still, "[t]he defendant bears the ultimate 'burden of proof and persuasion with respect to a defense of qualified immunity,' including whether the right at issue was clearly established at the time of the purported violation." *Artiga Carrero v. Farrelly*, 270 F. Supp. 3d 851 (D. Md. 2017), *quoting Meyers v. Baltimore City*, 713 F.3d 723 (4th Cir. 2013); *see also Wilson v. Kittoe*, 337 F.3d 392 (4th Cir. 2003).

For purposes of qualified immunity, officials can still be on notice that their conduct violates established law even in "novel factual circumstances", as notice does not require that facts of previous cases be materially or "fundamentally similar" to situation in question; rather, salient question is whether *the state of the law* at the time gives officials fair warning that their conduct is unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (Emphasis added). Indeed, the Court "do[es] not require a case directly on point in order to conclude that the law was clearly established so long as existing precedent [has] placed the statutory or constitutional question beyond debate." *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). The state of the law is clear.

In *Machie v. Manger*, No. 09-CV-2196-AW, 2013 WL 3353740, at *9 (D. Md. July 2, 2013), aff'd sub nom. *Machie v. Demme*, 564 F. App'x 17 (4th Cir. 2014), the Court denied to extend qualified immunity where an officer "twisted [the arrestee's] arms, tightly handcuffed him, and smashed his head into a wall". Id. Notably, there was no evidence of physical injury in *Machie*. Id. Still, the Court declined to extend the doctrine. Id. Here, the twisting of Ms. Sherrill's arm coupled with pushing her face into the concrete is strikingly similar to the conduct in *Machie*. The glaring difference is the extent and documentation of Ms. Sherrill's injuries. There were no such documented injuries in Machie and the Court refused to extend qualified immunity. Here, given the similarity of the conduct coupled with the extent of the injuries indicates the same result is warranted.

Further, in *Smith v. Ray*, 781 F.3d 95, 98 (4th Cir. 2015), the Court declined to extend the doctrine of qualified immunity where an officer "threw [the suspect] to the ground…jumped on her, jamming his full weight into her back with his knee, and painfully twisting her right arm

behind her back." Id. Clearly, under *Smith*, throwing a suspect to the ground and twisting the suspect's arm can constitute excessive force.

Furthermore, in *Stutzman v. Krenik*, 350 F. Supp. 3d at 382 (D. Md. 2018), the Court declined to extend the doctrine of qualified immunity where a suspect fled the police and was unreasonably handcuffed behind his back. ("Although [the suspect] plainly violated this statute by failing to stop his car for several miles, he did not create a public danger by driving at a reckless speed, leading [the officer] on a high-speed chase, or taking evasive maneuvers. At the time of the arrest, [the suspect] did not pose a risk or threat to the safety of others"). The *Stutzman* Court makes clear that fleeing and eluding is not, in and of itself, enough to justify an officer's use of significant force when arresting a suspect. Similar to *Stutzman*, Ms Sherrill did not lead the officers on a high-speed chase. Additionally, when Defendant Pristash cut her off by pulling in front of her, she stopped to avoid hitting his vehicle, thus undercutting any purported danger she posed. In analyzing the pursuit, it should be considered in the context of a low-speed pursuit at 32 miles per hour where Ms. Sherrill purposefully avoided colliding with Defendant Pristash. Given the similarities regarding the pursuit in Stutzman and Ms. Sherrill, this Court should decline to extend the doctrine of qualified immunity because her rights were clearly defined.

3. *This Court should decline to rely on the "hard take down" line of cases because those cases have nothing to do with physically taking a suspect to the ground*

Notably, the Defendants have likened the "hard take down" line of cases to the instant matter to argue that Maryland law condones throwing Ms. Sherrill to the ground and fracturing her elbow. See Dkt. 50-1 at 29. An analysis of this line of cases shows it is inapposite to Ms. Sherrill's case. The "hard take down" line of cases references ordering a suspect to the ground at gunpoint – not physically taking a suspect to the ground. See *In re David S.*, 367 Md. 523, 536

(2002) ("The police conducted what is sometimes referred to as a 'hard take down.' They ordered the suspects to lie on the ground and pointed weapons at them."); see also *Lee v. State*, 311 Md. 642, 653, 537 A.2d 235, 240 (1988) (where the "hard take down" consisted of officers charg[ing] with weapons drawn while identifying themselves as police officers and ordering the five young men to lie prone on the basketball court."). Thus, a "hard take down" does not represent throwing a suspect to the ground. a "hard take down" is where officers order a suspect to the ground at gunpoint. Accordingly, this Court should decline the Defendants' invitation to rely on a line of cases where no physical force is used on a suspect.

   c. **Summary Judgment Should Be Denied On Counts VI and VI (Negligence and Gross Negligence, respectively)**

Contrary to the Defendants' argument, Maryland law does not interpret negligence claims identically to intentional torts or constitutional torts. Indeed, *Walser v. Resthaven Mem'l Gardens, Inc.*, 98 Md. App. 371, 393-4 (1993) confirms that "an act committed intentionally may give rise to an action in negligence if one or more of the harmful consequences of that act are unintended." Here, a jury could find that the Defendants did not intend to injure Ms. Sherrill when they threw her to the ground and twisted her elbow. While the Defendants may have intended to throw her to the ground and twist her arm, the consequences thereof (i.e., Ms. Sherrill's injuries) could be unintentional. Accordingly, this Court should decline to find, as a matter of law, that Ms. Sherrill's negligence claims are inextricably tied to her claims for intentional and constitutional torts.

   d. **Defendants Are Not Entitled To Immunity Under The Maryland Tort Claims Act ("MTCA") Because Malice Is A Question For The Jury**

"Unlike the doctrine of qualified immunity, the question of MTCA immunity is 'subjective' under Maryland law and is generally a question for the jury." *Smith v. Maryland*,

No. CV MJG-17-3051, 2018 WL 1621048, at *11 (D. Md. Apr. 4, 2018), order clarified, No. CV RDB-17-3051, 2018 WL 3589075 (D. Md. July 25, 2018) ("Whether an officer's actions are grossly negligent, and therefore unprotected by statutory immunity, is generally a question for the jury.") citing *Henry v. Purnell*, 652 F.3d 524, 536 (4th Cir. 2011). Here, it is unequivocally a question for the jury as to whether Defendant Cunningham exhibited malice when he told Ms. Sherrill to "roll [her] fucking window down" and that "if you don't roll your fucking window down, I'm going to bust your window." Further evidence of malice is where Ms. Sherrill asked him to call for back up and he replied, "negative." Even more evidence of malice is where she asked whether they could go to a well-lit area, and Defendant Cunningham told her, "you're not going anywhere and to get out of the car or he would "drag [her] ass out of the car." Defendant Pristash demonstrated malice by cutting off Ms. Sherrill's path of travel by placing his car in front of Ms. Sherrill's car, then by forcefully extracting her without any prior verbal commands. Thus, it is a question for the jury as to whether these Defendants acted with malice when they threw Ms. Sherrill to the ground face first, twisted her arm, then fractured her elbow.

WHEREFORE Ms. Sherrill respectfully requests that this Court deny summary judgment on Counts I, II, VI, VII, and IX.

Respectfully submitted,

 **DOWNS COLLINS, P.A.**

_____/s/_____
Jason G. Downs, Esquire
Bar No.: 29575
20 S. Charles Street, Suite 901
Baltimore, Maryland 21201
O: (410) 462-4529
F: (410) 995-7200
Jason@downscollins.com
*Counsel for Plaintiff*

## **PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT EXHIBIT LIST**

| | |
|---|---|
| Exhibit 1 | Defendant Pristash's Deposition Transcript |
| Exhibit 2 | Defendant Cunningham's Deposition Transcript |
| Exhibit 3 | Plaintiff Sherrill's Deposition Transcript |
| Exhibit 4 | Plaintiff Sherrill's Trial Transcript |
| Exhibit 5 | Plaintiff's Redacted Medical Record |
| Exhibit 6 | Dr. Kenneth Lippman's Report |
| Exhibit 7 | Defendant Pristash's Trial Transcript |
| Exhibit 8 | Circuit Court MD Case Search |
| Exhibit 9 | Defendant Cunningham's Trial Testimony |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of August 2019, I caused a copy of the foregoing Plaintiff's Memorandum of Law In Opposition to Defendants' Motion for Summary Judgment to be served upon all counsel of record via the Court's ECF system.

/s/ Jason G. Downs
Jason G. Downs
*Counsel for Plaintiff*